<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
ANDY W. PENA,                      :
a/k/a Andrew W. Pena,              :
                                   :   Civil Action No. 10-1099 (WJM)
              Plaintiff,           :
                                   :
              v.                   :   OPINION
                                   :
MORRIS COUNTY CORRECTIONAL         :
FACILITY, et al.,                  :
                                   :
              Defendants.          :
```

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Andy W. Pena
Northern State Prison
P.O. Box 2300
Newark, NJ 07114

**MARTINI**, District Judge

   Plaintiff Andy W. Pena, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action alleging violations of his constitutional rights.

   At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on March 10, 2008, at Morris County Correctional Facility, he fell down a flight of stairs while being escorted from the shower to his cell.  Plaintiff alleges that the cause of the fall was the "negligence" of MCCF to correct a known safety hazard: "the poor condition of the steel stairs and the treads and shower shoes, provided by MCCF, also being in unsafe condition."  Plaintiff alleges that he made multiple requests for shower shoes that were of "appropriate size and in wearable condition."

Plaintiff alleges that, as a result of his fall, he was confined in Morristown Memorial Hospital from March 11 through March 21, 2008.  Plaintiff alleges that unnamed Sheriff's personnel intentionally inflicted emotional distress and committed assault and battery upon Plaintiff while he was in the hospital.  He alleges that he was handcuffed and shackled unnecessarily tightly to the hospital bed by unnamed officers who also made physical threats and refused to allow Plaintiff to use the restroom or urinal bottle, causing Plaintiff to be forced to urinate on himself.

Plaintiff alleges that Sheriff Edward Rochford and Warden Frank Corrente failed to adequately supervise, control, or otherwise monitor the activities of their subordinates.

In addition to Sheriff Rochford and Warden Corrente, Plaintiff names as defendants Morris County Correctional Facility, Morris County Sheriff's Office, Officer Lee Maimone, Officer Lomax, Officer Medwin, and Officer Getchens.

Plaintiff seeks compensatory and punitive damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

3

in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement.  And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely." ...  It
> makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice.  Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality.  Hence, when
> allegations of parallel conduct are set out in order to
> make a § 1 claim, they must be placed in a context that
> raises a suggestion of a preceding agreement, not
> merely parallel conduct that could just as well be
> independent action.

> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief."  A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

<u>Twombly</u>, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the
context of a § 1983 civil rights action, that the Twombly
pleading standard applies outside the § 1 antitrust context in
which it was decided.  See Phillips v. County of Allegheny, 515
F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read
Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory

6

statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." <u>Id.</u> at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u>
> > (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).  However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit.  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

### IV.   ANALYSIS

A.   Claims Against Municipalities and Supervisors

Plaintiff names as defendants the Morris County Correctional

Facility,[1] Morris County Sheriff's Office, Sheriff Edward

---

[1] All claims against Morris County Correctional Facility
will be dismissed with prejudice.  A jail is not a "person"
amenable to suit under 42 U.S.C. § 1983.  See Marsden v. Federal
BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an
entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook
County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (Cook County
Jail not a "person" under § 1983); McCoy v. Chesapeake

Rochford, and Warden Frank Corrente.  The Complaint fails to state a claim against any of these defendants.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellaciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

---

Correctional Center, 788 F. Supp. 890, 893-94 (E. D. Va. 1992) (local jail not a "person" under § 1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of corrections is an agency of the county and cannot be sued separately from the county under § 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) (county department of corrections not a suable entity separate from the county).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so

obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Here, Plaintiff makes no factual allegations that any of the municipal or supervisory defendants were responsible for an official policy or custom leading to the alleged violations, under any of the various situations where such responsibility can be said to exist, nor does he make any allegations of personal participation in the alleged violations. Accordingly, these claims of vicarious liability must be dismissed.

To the extent the allegations could be construed as a claim for failure to properly train or supervise subordinates, the Complaint also fails to state a claim.

Where a need for "more or different training ... is so
obvious, and the inadequacy so likely to result in constitutional
violations, that the failure to train ... can fairly be said to
represent official policy," City of Canton v. Harris, 489 U.S.
378, 390 (1989), and that failure to train "actually causes
injury," a supervisor may be held liable, Id.

In addition, in resolving the issue of supervisory
liability,

> the focus must be on adequacy of the training program
> in relation to the tasks the particular officers must
> perform.  That a particular officer may be
> unsatisfactorily trained will not alone suffice to
> fasten liability on the [supervisor], for the officer's
> shortcomings may have resulted from factors other than
> a faulty training program.  ...  Neither will it
> suffice to prove that an injury or accident could have
> been avoided if an officer had had better or more
> training ... .  Moreover, for liability to attach ...
> the identified deficiency in a city's training program
> must be closely related to the ultimate injury.

Id. at 390-91.

Here, Plaintiff alleges nothing more than that particular
corrections officers caused him injury, plainly an insufficient
allegation upon which to base liability for failure to train or
supervise.  Accordingly, Plaintiff's failure to train or
supervise claim must be dismissed for failure to state a claim.

B.    Eighth Amendment Claims

The Eighth Amendment to the United States Constitution,
applicable to the individual states through the Fourteenth
Amendment, prohibits the states from inflicting "cruel and

unusual punishments" on those convicted of crimes.  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation."  <u>Helling v. McKinney</u>, 509 U.S. at 32 (quoting <u>Rhodes</u>, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994); <u>Wilson</u>, 501 U.S. at 303.

   1.   <u>Conditions Claim</u>

Plaintiff's allegations that he suffered a fall because he was required to walk on steel steps in ill-fitting shower shoes

is an attempt to state a claim that the conditions of his confinement violated the Eighth Amendment.

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997). The question of

16

"deliberate indifference" is a subjective inquiry, but "risk of harm" is evaluated objectively.  See Betts v. New Castle Youth Development Center, No. 09-3753, 2010 WL 3528902 (3d Cir. Sept. 13, 2010); Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003).

Plaintiff's allegations are not sufficient to state a claim. To show culpability, Plaintiff must allege facts demonstrating that the defendants were aware of facts from which the inference could be drawn that a substantial risk of harm exists and that they also drew the inference.  Here, Plaintiff has alleged only that he requested shower shoes that fit him and that were, in some undescribed way, in a better condition.  These facts do not, objectively, suggest that a substantial risk of harm existed, from a potential fall, or that any named defendant actually drew the inference.  The allegations suggest no more than negligence, not a basis for Eighth Amendment liability.  Daniels v. Williams, 474 U.S. 327, 330-31 (1986).  See also Franco-Calzada v. United States, 375 Fed.Appx. 217, 2010 WL 1141384 (3d Cir. March 25, 2010) (no Eighth Amendment violation based on failure to inspect and replace bunk ladders that were allegedly too small for adult, which allegedly caused fall); Carpenter v. Kloptoski, Civil No. 08-2233, 2010 WL 891825 (M.D. Pa. March 10, 2010) (no Eighth Amendment violation based on fall in shower allegedly caused by defective shower shoe); Townsel v. Quinn, Civil No. 07-0482, 2008 WL 650284 (W.D. Wash. Jan. 24, 2008), Report and Rec. Adopted,

17

2008 WL 656272 (W.D. Wash. March 7, 2008), <u>affirmed</u>, 369
Fed.Appx. 830 (9th Cir. March 5, 2010) (no Eighth Amendment
violation based on fall in shower caused by wearing allegedly
defective shower shoes); <u>Wedemeyer v. City of Williston Unknown</u>
<u>Transport Officers</u>, Civil No. 07-0033, 2007 WL 1855050 (D.N.D.
June 26, 2007) (no Eighth Amendment violation based on fall
allegedly resulting from forced wearing of shower shoes outside
on ice); <u>Robinson v. Doe II</u>, Civil No. 05-1054, 2006 WL 1686706
(E.D. Cal. June 20, 2006) (no Eighth Amendment violation based on
fall allegedly resulting from required wearing of shower shoes in
wet showers).

In addition to the deficiencies noted above, Plaintiff has
failed to allege facts tying any of the named individual officers
to the events surrounding his fall.  It is not sufficient to name
a list of defendants at the beginning of a complaint and then
fail to make factual allegations tying those defendants to the
alleged constitutional violations.  Such a complaint does not
give a defendant fair notice of the claim against him and the
grounds upon which it rests.  For this reason, also, the
Complaint fails to state a claim as against any of the
defendants.  This claim will be dismissed.

2.   <u>Claim of Cruelty at Hospital</u>

Plaintiff alleges that he was subjected to cruel and unusual
punishment while hospitalized, because he was threatened, because

18

he was not allowed to use the bathroom, and because he was allegedly handcuffed to the bed too tightly.

Where the Eighth Amendment claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted):  "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6.  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

19

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force

is "excessive," the level of a constitutional violation.

As the United States Supreme Court has stated,

"[i]ntentional harassment of even the most hardened criminals

cannot be tolerated by a civilized society."  Hudson v. Palmer,

468 U.S. 517, 528 (1984).  The Eighth Amendment protects

prisoners against calculated harassment.  Id. at 530.  Generally,

however, mere verbal harassment does not give rise to a

constitutional violation.  See McBride v. Deer, 240 F.3d 1287,

1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth

Amendment violation);  Oltarzewski v. Ruggiero, 830 F.2d 136 (9th

Cir. 1987) (vulgar language);  Rivera v. Goord, 119 F. Supp.2d

327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate

inmate's constitutional rights);  Prisoners' Legal Ass'n v.

Roberson, 822 F. Supp. 185 (D.N.J. 1993);  Murray v. Woodburn, 809

F. Supp. 383 (E.D. Pa. 1993);  Douglas v. Marino, 684 F. Supp. 395

(D.N.J. 1988).

Plaintiff's allegations are not sufficient to state a claim.

The characterization of the handcuffs as "tight" is not

sufficient to demonstrate the use of excessive force.  Nor does

the allegation that Plaintiff was not permitted to use the

restroom state a claim; Plaintiff does not allege any surrounding

circumstances that would permit the inference that this level of

20

control of his movements was or was not appropriate under the circumstances.  Finally, the bare allegation that officers threatened him is not sufficient to state a claim for an Eighth Amendment violation.

In addition, as noted above, Plaintiff has failed to tie any of the alleged wrongdoing to any of the named defendants.  Thus, he has failed to state a claim against any of the individual defendants.

Because of the resolution of this matter, it is not necessary to determine whether these claims are properly joined in one action.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[2]

---

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and

An appropriate order follows.

s/William J. Martini

_____

William J. Martini
United States District Judge

Dated: 10/4/10

---

explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  <u>Id.</u>